# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

**FILED**

JAN 19 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Seizure of )
Approximately $24,100.00 U.S. Currency in the ) 
custody of the St. Charles County Police ) Case No. 4:23-MJ-7043-SPM
Department )
)

## APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT

I, Chandler Gouger, being duly sworn depose and say:

**I am a Special Agent with the Drug Enforcement Administration, and have reason to believe that there is now certain property namely**

Approximately $24,100.00 U.S. Currency in the custody of the St. Charles County Police Department

**which is**

subject to forfeiture under Title 21, United States Code, Sections 853 & 881(a), and therefore, is subject to seizure under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Sections 853(e)&(f) and 881(b) concerning a violation of Title 21, United States Code, Sections 841 and 846.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

**Continued on the attached sheet and made a part hereof.      X   Yes _____ No**

*Chandler Gouger*

**Signature of Affiant**, Special Agent Chandler Gouger

**Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41**

January 19, 2023  at 11:53 am                      at  St. Louis, Missouri
**Date and Time Issued**                             **City and State**

Honorable Shirley P. Mensah, U.S. Magistrate Judge
**Name and Title of Judicial Officer**                **Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF A SEIZURE WARRANT

I, Chandler Gouger, Special Agent with the Drug Enforcement Administration of the United States Department of Justice, being duly sworn, depose and state that:

## I.   **INTRODUCTION**

1.      I have served as a Special Agent with the DEA in the St. Louis Field Division Office since September of 2021. Prior to my employment with DEA, I served two years with the Chattanooga Police Department as a Police Officer.  During the course of my law enforcement experience I have participated in numerous investigations involving controlled substances.  I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations. I have participated in investigations which led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved.   I have participated in numerous drug-related training courses throughout my law enforcement career.  I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.  I am an investigative and law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and as such, I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code

2.      During my years working in law enforcement I have received training and gained experience in all aspects of controlled substance investigations, to include: methods of unlawful drug trafficking; identification of controlled substances; means through which drug traffickers

1

derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and statutes permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

3.     I am currently part of an investigative team, composed of experienced drug investigators, that are involved in drug interdiction investigations covering airport, bus and train, parcel packages, and highway couriers that are operating in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

4.     This affidavit is submitted in support of an application for the issuance of a seizure warrant for the items listed and detailed in Section II of this affidavit - all within the Eastern District of Missouri.  As an experienced and trained criminal investigator, it is your Affiant's opinion that probable cause exists to believe that the U.S. currency seized in this investigation was proceeds resulting from violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving the distribution and conspiracy to distribute controlled substances.

5.     The statements provided herein are based in part on information provided by DEA personnel, including but not limited to Special Agents and Task Force Officers, and your Affiant's own experience and background as a DEA Task Force Officer.  The information included in this affidavit is based on your Affiant's personal knowledge and the investigative sources of your Affiant and other members of the investigative team.

6.     Since this affidavit is being submitted strictly in an effort to obtain a seizure warrant for the listed item(s), your Affiant has set forth only the facts that your Affiant believes are the essential framework for the issuance of the seizure warrant for the listed item(s).

## II.     **ITEM(S) FOR WHICH THE SEIZURE WARRANT IS REQUESTED**

$24,100.00 U.S. Currency originally seized on August 18, 2021

### III.   **LEGAL FRAMEWORK**

7.      The proceeds of drug offenses are subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 21 U.S.C. § 881(a)(6), "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance…all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [the Controlled Substances Act]" are subject to civil forfeiture.  In addition, pursuant to 21 U.S.C. § 853(a)(1), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of a drug violation are subject to criminal forfeiture.

8.      This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

9.      Pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture.  A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A).  As detailed below, acts or omissions under investigation occurred in the Eastern District of Missouri.  21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

10.     Based on the foregoing, the issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) for criminal forfeiture; and 18 U.S.C. § 981(b) for civil forfeiture.  Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure

warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Missouri.

## IV.   **INTERDICTION STOP**

11.    On August 18, 2021, at approximately 1:23 A.M., Drug Enforcement Administration Task Force Officer (TFO) Stephen Schue was conducting traffic enforcement on Interstate 70 near mile-marker 206.  During TFO Schue's enforcement he observed a Sport Utility Vehicle traveling westbound on Interstate 70, in the right hand lane (lane #2).  TFO Schue observed the SUV following behind a white semi-tractor trailer, at approximately one car length of distance.  TFO Schue continued to observe the SUV travel at that distance for approximately one-quarter mile.  TFO Schue followed behind the SUV and observed the front and rear passenger side tires cross over the white dotted lane lines (skip lane lines) by approximately one-foot and travel into the merge lane (lane #3) for approximately two-hundred feet.  The SUV returned to its original lane of travel (lane #2).  From the above-mentioned facts and observations, TFO Schue activated his patrol vehicle's emergency equipment and initiated a traffic stop on westbound Interstate 70 near the 203 mile-marker. The vehicle was later fully identified as a 2011 Ford Edge, blue in color, Kentucky state license 945-YZS, and VIN# 2FMDK4JCXBBA06736.

12.    TFO Schue contacted the driver, later identified as Avelino SARMIENTO, from the front passenger side window.  As TFO Schue approached the SUV he observed an individual in the back seat, later identified as Ferrel VALDEZ, who appeared to be sleeping.  TFO Schue explained the reasons to SARMIENTO why he was being stopped and requested his driver's license, proof of insurance, and vehicle registration.  SARMIENTO informed TFO Schue that he did not have a valid driver's license or any type of identification to identify himself.  While SARMIENTO was explaining this to TFO Schue, VALDEZ had woken up and explained to TFO

Schue the vehicle belonged to him and SARMIENTO was just "helping" him drive because he was tired. TFO Schue asked VALDEZ if he could retrieve the vehicle's registration. While VALDEZ was retrieving his vehicle's registration, TFO Schue asked VALDEZ where they were traveling to and he replied "California." TFO Schue asked VALDEZ what was taking them out to California, and he stated that he was going out there to check up on his business. While VALDEZ was retrieving the vehicle's registration, TFO Schue observed both hands of VALDEZ were rapidly shaking, and it appeared he was attempting to retrieve his vehicle's registration in a very fast manner. TFO Schue requested VALDEZ's driver's license and he retrieved it from his wallet and handed a California driver's license to him. TFO Schue again noticed both VALDEZ's hands rapidly shaking, displaying indicators of nervousness. TFO Schue observed the vehicle's registration and it revealed VALDEZ's vehicle was registered out of Louisville, Kentucky. TFO Schue asked VALDEZ if he was currently residing in Kentucky or California.  VALDEZ stated he was working on moving to Kentucky but had his business in California. As TFO Schue was speaking with VALDEZ, St. Charles County Police Department DEA TFO Anthony Hojsik with his canine partner "Fleck" arrived to assist.

13.     TFO Schue conducted a records check, which revealed VALDEZ had multiple prior arrests for Possession of a Controlled Substance, Transportation of a Controlled Substance, and Alien Inadmissibility under Section 220.  TFO Schue also conducted a records check of SARMIENTO which revealed no results for him ever having a driver's license or a social security number.  TFO Schue believed based on this, that SARMIENTO may be an illegal immigrant.

14.     TFO's Schue and Hojsik contacted VALDEZ and requested him to exit the vehicle. VALDEZ voluntarily exited the vehicle. TFO Schue contacted VALDEZ at the rear of the vehicle and conducted a consensual frisk for weapons. During the consensual frisk, TFO Schue believed

he felt what appeared to be a large bundle of currency in VALDEZ's front pocket. TFO Schue asked VALDEZ how much money was in his pocket and he said about "nine-hundred dollars." The consensual frisk for weapons was met with negative results.

15.     TFO Schue asked VALDEZ if he was transporting any type of contraband, weapons, or ammunition within his vehicle. VALDEZ stated that he had no contraband, weapons, or ammunition in his vehicle. TFO Schue asked VALDEZ if he was traveling with any large amounts of US currency and VALDEZ said, he did not have any large amounts of US currency within the vehicle. TFO Schue asked VALDEZ if he could search the vehicle and its contents. VALDEZ verbally granted TFO Schue consent to search the vehicle and the contents of the vehicle.  TFO Schue contacted SARMIENTO and requested him to exit the vehicle. SARMIENTO voluntarily exited the vehicle and TFO Schue contacted him at the rear of the vehicle. TFO Schue conducted a consensual frisk for weapons and the consensual frisk for weapons was met with negative results.

16.     TFO Schue and TFO Hojsik began their search of the vehicle and its contents. During the search of a suitcase in the rear cargo area, TFO Hojsik located three black taped bundles concealed within clothing. Due to TFO Hojsik's training and experience, he believed the three black in color bundles were consistent with concealing US currency. TFO Hojsik asked VALDEZ if the bundles were currency and VALDEZ said, "yes, maybe thirty-thousand." TFO Hojsik retrieved the three black in color bundles of suspected US currency and placed them on the passenger side dashboard of TFO Schue's patrol vehicle. It became apparent that VALDEZ was likely involved in criminal activity based on the totality of circumstances.  TFO Schue requested VALDEZ and SARMIENTO to accompany him and TFO Hojsik to the State of Missouri weigh

6

station to further the investigation and check for more contraband.  Both VALDEZ and SARMIENTO voluntarily agreed.

17.     Upon arrival at the State of Missouri weigh station, a further search of the vehicle was conducted and met with negative results.

18.     TFO Schue verbally read VALDEZ his constitutional rights per Miranda directly from DEA-13A. TFO Schue asked VALDEZ if he understood his rights and he replied "sure." TFO Schue asked VALDEZ if he was willing to answer some questions, with VALDEZ replying "sure."  TFO Schue asked VALDEZ if he could explain his travel plans. VALDEZ explained he was going from "Louisville, Kentucky" to "Desert Hot Springs, California" to work on his business of construction. TFO Schue asked VALDEZ how long he was planning on going to California and he said, for about two weeks. TFO Schue asked VALDEZ who the driver (SARMIENTO) was and VALDEZ stated he was his "mechanic." TFO Schue asked VALDEZ what the driver's (SARMIENTO) name was, and VALDEZ said he did not know because it was a "weird" name. TFO Schue asked VALDEZ where he was currently residing at and he explained he was living in Desert Hot Springs, California but was planning to move to Louisville, Kentucky. TFO Schue asked VALDEZ how he obtained the US currency located in the three separate black bundles. VALDEZ said he had been saving the money. TFO Schue asked VALDEZ how much US currency was in the three black bundles.  VALDEZ stated he believed there was "twenty-six thousand dollars" but wasn't exactly sure because he had "dipped" into it. TFO Schue asked VALDEZ what he was going to do with the US currency, and he explained he was going to purchase vehicles for his dealership and SARMIENTO was with him as his mechanic.

19.     It should be noted while TFO Schue was speaking with VALDEZ, he observed a tattoo on his right shoulder. Through TFO Schue's training and experience, he was able to identify

the tattoo of Santa Muerte.  Through TFO Schue's training and experience, Santa Muerte is classified as a "Narco Saint" or "Saint of Death," which is prayed upon for protection from police officers and for safe travels while smuggling currency or illegal narcotics and contraband.  TFO Schue inquired about VALDEZ's tattoo and he said he couldn't identify the tattoo in English. TFO Schue asked VALDEZ if it was "Santa Muerte" and VALDEZ nodded his head and said "yes."  TFO Schue asked VALDEZ if he was currently working and he said he had two workers in California running his construction business. TFO Schue asked VALDEZ what his business's name was, and he said he did not have a name for it.

20.    TFO's Schue and Hojsik retrieved the US currency from inside the three black packages and placed the US currency into DEA Self Sealing Evidence Envelope (SSEE) #S001347876. It should be noted the US currency was concealed with multiple layers of clear plastic and multiple layers of black electrical tape.

21.    TFO Hojsik conducted a discretionary sniff utilizing St. Charles County Police Department canine "Fleck." The discretionary sniff led to a positive canine alert on the US currency located in the suspect's luggage.

22.    TFO Schue explained to VALDEZ that the U.S. currency located in the three separate black bundles were going to be detained by the St. Charles County Police Department and DEA for further investigation based on the suspicious circumstances and unlikely story he had given, the method of packaging, and a positive canine alert.

23.    TFO Schue sealed the US currency in SSEE #S001347876 in the presence of VALDEZ and issued VALDEZ a DEA-12 receipt for the currency.

24.     TFO Schue issued SARMIENTO a St. Charles County Police Department Warning Ticket #551006110 for Following too closely and Failed to maintain single lane.  Both VALDEZ and SARMIENTO were then released from the scene.

25.     TFO Schue and TFO Hojsik responded to the St. Charles County Police Department located at 101 Sheriff Dierker Ct, O' Fallon , MO 63368 where US currency was sealed inside SSEE #S001347876 was placed into evidence storage.

26.     Based on my training and experience I know it is common for drug traffickers to transport the proceeds of their illicit activities from eastern and Midwestern states to western states and locations.  More specifically, it is common for drug traffickers and their associates to transport large quantities of currency westbound along Interstate Highway 70.  It is common for drug traffickers to provide unreasonable, illogical, conflicting and non-specific information concerning the purpose, origin and destination of their travels.  It is common for drug traffickers to provide incomplete and irrational excuses for why they are in possession of instruments that are commonly associated with drug trafficking, such as multiple phones, narco saint tattoos or statues, or deny knowledge of their presence.

27.     Based on the large amount of currency discovered in the vehicle and the conflicting statements made by VALDEZ and SARMIENTO as to the purpose and destination of their travel, it is believed the currency in this case is drug proceeds.

## V.     POST SEIZURE EVENTS

28.     On August 26, 2021, the Circuit Court of St. Charles County, Missouri, issued a court order to turn the currency over to the Drug Enforcement Administration for federal forfeiture.

29.     Based on an oversight, the state prosecutor's office did not notify the DEA that the order had been signed.  A DEA Task Force Officer contacted the prosecutor's office the end of

October 2021 and was informed that the prosecutor's office had the order.  The TFO obtained the order and then provided it to DEA.

30.     A seizure warrant is necessary to transfer the subject currency into federal custody due to the expiration of noticing that occurred after the Missouri court order of transfer was signed.

31.     Pursuant to 18 U.S.C. § 983(a)(1)(A)(iv), when property is seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law, notice shall be sent not more than 90 days after the date of seizure by the State or local law enforcement agency.

32.     When the Government does not send notice of a seizure as required, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time.  *See* 18 U.S.C. § 983(a)(1)(F); *see also* 28 C.F.R. § 8.9(c)(4) (stating that administrative forfeiture proceedings may commence if property is subsequently seized pursuant to a federal seizure warrant and the seizing agency sends notice as soon as practicable, and in no case more than 60 days after the date of the federal seizure).

33.     The undersigned is requesting this warrant in order to allow the Government to commence administrative forfeiture notice.

## VI.     <u>SUMMARY</u>

34.     Based on the foregoing facts and circumstances, your Affiant believes that United States currency possessed by VALDEZ and SARMIENTO were drug proceeds in violation of Title 21, United States Codes, Section 841(a)(1) and 846, therefore subject to forfeiture under Title 21, United States Code, Section 853.

35.

_Chandler Gouger_
Chandler Gouger
Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this __19th__ day of January, 2023.

The Honorable Shirley P. Mensah
United States Magistrate Court Judge
Eastern District of Missouri

11